# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IV SOLUTIONS, INC., a California corporation,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>EMPIRE HEALTHCHOICE ASSURANCE, INC., a corporation doing business as Empire Blue Cross Blue Shield; and Does 1 through 10, inclusive,<br><br>　　　　　　Defendants. | Case No. 2:17-cv-05615-ODW-SK<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [10]** |

## I. INTRODUCTION

This action arises out of claims for fraud, breach of contract, and open book account related to the administration of medical services. Plaintiff IV Solutions initiated this action in the Los Angeles County Superior Court on June 23, 2017. (Exhibit 1, ECF No. 1-2.) Defendant Empire HealthChoice Assurance, Inc., removed the case to federal court on July 28, 2017. (Notice of Removal, ECF No. 1.) Before the Court now is Defendant's Motion to Dismiss Plaintiff's Complaint. (Mot., ECF

No. 10.) For the reasons discussed below, the Court **GRANTS** Defendant's Motion and **DISMISSES** Plaintiff's Complaint without prejudice.[1]

## II. FACTUAL BACKGROUND[2]

Plaintiff is a home infusion pharmacy that provided medical services to Defendant's insured, M.M.[3] (*See generally* Compl., Exhibit 1, ECF No. 1-2.) After being diagnosed with hypogammaglobulinemia, Dr. Karo Arzoo, one of Defendant's in-network physicians, prescribed M.M. an "urgent administration of intravenous immunoglobulin" ("IVIG"). (*Id.* ¶ 11.) M.M. was referred to Plaintiff because it was the only provider able to promptly administer the IVIG treatments. (*Id.* ¶ 13.)

Plaintiff first provided M.M. IVIG treatments on February 25, 2011, which Defendant subsequently authorized. (*Id.* ¶¶ 14–15.) According to Plaintiff, on March 15, 2011, Defendant again authorized Plaintiff to provide the IVIG treatments for the dates of service March 1, 2011–June 1, 2011. (*Id.* ¶ 15.) On February 20, 2012, Defendant authorized Plaintiff to treat M.M. for a year—February 25, 2012–February 25, 2013. (*Id.*) Plaintiff alleges that during each authorization Defendant represented that it would pay Plaintiff's "billed charges for the services administered to M.M." (*Id.*) Plaintiff also asserts that on April 16, 2012, Defendant informed Plaintiff that the services provided to M.M. were "covered at 100%." (*Id.*) Plaintiff further alleges that in reliance on Defendant's representations and repeated authorizations, it continued to provide the IVIG treatments to M.M. (*Id.*)

In July 2011, Defendant informed Plaintiff that Plaintiff was "no longer authorized" to provide IVIG treatments to M.M. (*Id.* ¶ 16.) Nevertheless, Plaintiff continued to provide M.M. the "medically necessary physician-ordered" IVIG

---

[1] After carefully considering the papers filed in support of, and against, the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] The Court recites the facts as pleaded in Plaintiff's Complaint, which the Court is required to accept as true for the purposes of this Motion. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

[3] M.M.'s identify is known to Defendant, and will remain confidential to protect his or her privacy.

treatments based on their belief that Defendant was unable to find a suitable provider to replace Plaintiff. (*Id.*) So, Plaintiff continued to provide M.M. the IVIG treatments until September 14, 2012. (*Id.* ¶ 17.)

Plaintiff alleges that Defendant represented on several occasions that it would pay Plaintiff the billed charges. (*Id.* ¶¶ 18–19.) According to Plaintiff, on February 20, 2012, Defendant's employee, Theresa Bowman, orally represented that Plaintiff was authorized to provide the IVIG treatments to M.M. for the dates of service February 25, 2012–February 24, 2013. (*Id.* ¶ 18.) Plaintiff states that Theresa Bowman also represented that Plaintiff "would be paid for its services at a rate of 100% of [Plaintiff's] billed charges for such services." (*Id.*) Plaintiff argues that Theresa Bowman knew that Defendant "intended not to pay [Plaintiff] it's billed charges..." and that this knowledge constitutes the "Suppressed Fact" to show Defendant's fraud. (Compl. ¶ 30.) Plaintiff further alleges that on April 10, 2012, and June 19, 2012, Defendant issued "written retro-authorization[s]" covering the February 25, 2011–January 29, 2012, and February 25, 2012–February 24, 2013, dates of service, respectively. (*Id.* ¶ 19.)

Plaintiff uniformly charges the same for its products and services, and was to be paid at an "in-network level of benefits." (*Id.* ¶¶ 21–22.) Plaintiff asserts that because Defendant did not negotiate a discount with Plaintiff, the applicable rate for the services provided to M.M. is the billed charges. (*See id.* ¶ 23.) Thus, Plaintiff billed Defendant a total of $5,954,020.89 for the services it provided to M.M. (*Id.* ¶ 25.) To date, Defendant has only paid $103,050.63 of the billed charges, leaving an unpaid balance of $5,850,970.26. (*Id.*)

Beginning in April 2012, in response to Plaintiff's inquiry regarding the underpayments, Defendant began reviewing Plaintiff's claims related to the services it provided to M.M. (Compl. ¶ 26.) In a series of communications with Defendant from April 3, 2012–February 4, 2014, Plaintiff repeatedly discussed Defendant's unpaid balance. (*Id.*) According to the Complaint, on several occasions Defendant

3

communicated to Plaintiff that it was "reviewing" the claims and would provide Plaintiff with a final answer regarding its remaining balance. (*Id.*) Specifically, Plaintiff alleges that on April 3, 2012, "Linda Hennessy, [Defendant's] employee, informed Sheina Saeger, [Plaintiff's employee], that [Defendant] 'will most likely review the case this week.'" (Compl. ¶ 27(a).) And on April 16, 2012, one of Defendant's supervisors, "Kimbra," "confirmed that 'the services are covered at 100%.'" (*Id.* ¶ 27(b).) Plaintiff further alleges that in October 2012, "Lynn Hounihan, [Defendant's Employee], informed Sheina Saeger, [Plaintiff's employee], that she was working on getting the 2012 claims processed that were denied in error." (*Id.* ¶ 27(c).) On July 29, 2013, "[Defendant] informed [Plaintiff] that it had 'repriced'[Plaintiff's] claims and would be paying additional amounts" to Plaintiff based on the repricing. (*Id.* ¶ 27(d).)

Plaintiff alleges that in September 2013 it received "numerous small payments" from Defendant for the services provided to M.M., but far less than the total amount due. (*See id.* ¶ 27(e).) So, on February 4, 2014, Plaintiff's attorney sent a demand letter to Defendant requesting that it pay the remaining billed charges. (*Id.* ¶ 27(f).) In June 2014, Defendant responded to Plaintiff's letter and for the first time "unequivocally inform[ed]" Plaintiff that it would not pay the remaining balance due. (*Id.* ¶ 27(g).)

Consequently, Plaintiff filed this action three years later, on June 23, 2017, alleging claims for (1) fraud, (2) breach of contract, and (3) open book account. (*See generally* Compl.) On September 8, 2017, Defendant filed a Motion to Dismiss, which the parties have fully briefed. (*See generally* Mot., ECF No. 10-1; ECF Nos. 11–12.) In support of its Motion, Defendant request that the Court take judicial notice of the California State Board of Pharmacy's Decision and Order dated April, 17, 2015. (Exhibit 1, ECF No. 13.) (*See generally id.*) As Plaintiff does not oppose Defendant's request and the Board of Pharmacy's decision and order is a publicly

1 available government document not subject to reasonable dispute, the Court grants
2 Defendant's request. Fed. R. Evid. 201(b).[4]

### III. LEGAL STANDARD

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).[5]

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

---

[4] The Court is limited to the existence of the documents it takes upon judicial notice, but not the facts contained therein. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

## IV. DISCUSSION

**A. Statute of Limitations**

Defendant argues that Plaintiff's claims for fraud, breach of contract, and open book account have all expired. (Mot. 1.) A district court may dismiss claims if the running of the statute of limitations is apparent on the face of the complaint and if "the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).

1. *Breach of Contract*

Defendant contends that the allegations that give rise to Plaintiff's claim for breach of contract are untimely, and thus barred by the statute of limitations. (Mot. 5.) Defendant's argument rests on its belief that Plaintiff became aware of Defendant's underpayments as early as April 2012. (*Id.*; Reply 2, ECF No. 12.) In opposition, Plaintiff argues that the statute of limitations did not begin until June 2014, when Defendant "unequivocally inform[ed] [Plaintiff] for the first time that it would not pay [Plaintiff] the remaining amounts of its billed charges due." (Compl. ¶ 27(g).)

The statute of limitations for a written contract is four years. Cal. Code Civ. P. § 337. A claim for breach of contract "accrues at the time of the breach, which then starts the limitations period running. *Cochran v. Cochran*, 56 Cal. App. 4th 1115, 1120 (1997) (citation omitted). Where a contract fails to specify a time for performance, like the contract in this case, "the party is obliged to perform within a reasonable time, and the statute of limitations begins to run when a 'reasonable time' has expired without performance." *IV Sols., Inc., v. United HealthCare*, No. CV 15-01418 DDP (SSx), 2015 WL 4127823, at *2 (C.D. Cal. July 7, 2015); *see also* Cal. Civ. Code § 1657. "What constitutes a reasonable time for performance is a question of fact, and depends on the circumstances of each case." *Yue v. Conseco Life Ins. Co.*, Case No. CV 08-1506 AHM (JTLx), 2008 WL 5158869, at *7 (C.D. Cal. Dec. 8,

2008), *on reconsideration in part*, Case No. CV 08-1506 AHM (JTLx), 2010 WL 11509293 (C.D. Cal. Oct. 8, 2010) (internal quotations and citations omitted).

Here, Plaintiff alleges that pursuant to an oral contract that was later memorialized in writing, it provided services to Defendant's insured from February 25, 2011, through September 2012. (*See* Compl. ¶¶ 24, 17.) But, earlier in April 2012, Plaintiff became aware of Defendant's underpayments for its services. (Compl. ¶ 26.) So, in April 2012 Plaintiff "notified Defendant of the shortfall of Defendant's payments and requested that Defendant remedy that shortfall." (*Id.*) After a series of communications between the parties—including a demand letter from Plaintiff's counsel in February 2014—Defendant finally sent a letter in June 2014 that "unequivocally inform[ed] [Plaintiff] for the first time that it would not pay" Plaintiff for the billed charges. (Compl. ¶ 27(g).)

In regard to the determination of whether Plaintiff's contract claim has expired, neither party focuses on the appropriate inquiry—what was a reasonable amount of time for Defendant to delay payment to Plaintiff for the billed charges.[6] Cal. Civ. Code § 1657. Nevertheless, on the face of its Complaint, Plaintiff has not alleged facts demonstrating that it was reasonable for Defendant to delay, and then ultimately deny, payment of $5,850,970.26 for three years after Plaintiff first provided services in 2011. *See Conseco Life Ins. Co.*, 2008 WL 5158869, at *7. Payment was reasonably due under the contract at some time before February 2014—over one year after Plaintiff finished providing its contracted services. Therefore, Plaintiff's breach of contract claim, which has a four year statute of limitations, is untimely as it expired in February 2017 and this case was not filed until June 23, 2017.

---

[6] In its Opposition, Plaintiff argues that the "statute of limitations begins to run when the insurer issues an ***unequivocal*** denial of payment in writing." (Opp'n 6 (citing *IV Sols., Inc. v. PacifiCare Life & Health Ins. Co.*, Case No. 16-07153 SJO (MRWx), 2016 WL 7888009 (C.D. Cal. Dec. 19, 2016)).) The court in that case found that *Vishva Dev, M.D., Inc. v. Blue Shield of California Life & Health Insurance Co.*, 2 Cal. App. 5th 1218 (2016), "stands for the proposition that the statute of limitations begins to run when the insurer issues an unequivocal denial of payment . . . ." However, the Court finds that the facts of this case are distinguishable from *Vishva*, where here, Plaintiff has filed a claim under ordinary contract law, and not quantum meruit.

7

### 2. *Fraud*

The statute of limitations for a fraud claim is three years. Cal. Civ. Code § 338. "The cause of action . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Civ. Code § 338; *see also Gutierrez v. Mofid*, 39 Cal. 3d 892 (1985) (the statute of limitations period begins to run when the plaintiff has actual or constructive knowledge of the facts essential to her claim for fraud). Plaintiff's fraud claim is based on its allegations that several of Defendant's employees "knew that Defendant intended not to pay [Plaintiff] its billed charges . . . and not to make payments to [Plaintiff] in a timely manner (the 'Suppressed Fact')." (Compl. ¶ 30.) Plaintiff argues that it did not become aware of the Suppressed Fact until June 2014, when Defendant "unequivocally" informed Plaintiff that it would not pay the billed charges. (Opp'n 3.)

Here, the Court finds that Plaintiff's claim for fraud is time barred, as Plaintiff has not alleged on the face of the Complaint sufficient facts that it was unaware of Defendant's "Suppressed Fact" such as to delay the accrual of its claim until June 2014. Plaintiff had, at a minimum, constructive knowledge that Defendant did not intend to make payments to Plaintiff in a timely manner as early as September 2013. This is evidenced by the fact that after a year of communicating with Defendant regarding payment (February 2012–February 2013), Defendant eventually only sent Plaintiff "small payments . . . in amounts far less than the amounts due" in September 2013. (Compl. ¶ 27(e).) Moreover, in February 2014, five months after Defendant sent those small payments, and over a year after Plaintiff finished providing its services under its contract with Defendant, Plaintiff's counsel sent Defendant a letter "demand[ing] that [Defendant] pay the billed charges remaining." (*Id.* ¶ 27(g).) Therefore, it can be inferred that at the latest, in February 2014, Plaintiff was aware of the fact that after years of underpayments Defendant did not intend to make payments

to Plaintiff "in a timely manner" or pay its billed charges. Therefore, Plaintiff's claim for fraud is untimely, having expired in February 2017.

### 3. Open Book Account

A claim for open book account expires after four years. Cal. Code Civ. P. § 337. "A cause of action for an open book account accrues on 'the date of the last entry in the book account.'" *United Healthcare*, 2015 WL 4127823, at *2 (citing *In re Roberts Farms Inc.,* 980 F.2d 1248, 1253 (9th Cir. 1992)). Plaintiff alleges that they "maintained in the regular course of business, an account of debits and credits for service and payments transactions, in a reasonably permanent form" for the services it provided to M.M. (Compl. ¶¶ 50–52.) Plaintiff also alleges that it continued to provide M.M. services until September 14, 2012. (Compl. ¶¶ 17, 24.) So presumably, the last entry in the book account was made sometime in September 2012—when Plaintiff performed the final IVIG treatment—meaning the four year statute of limitations for this claim has expired. *See e.g.*, *United Healthcare*, 2015 WL 4127823, at *2 (finding that "the final entry in [a] book account was presumably made some time shortly after the provision of the final treatment [to the patient] . . . .").

## B. Equitable Tolling

In Opposition to Defendant's Motion, Plaintiff asserts that the statute of limitations for its claims was equitably tolled while Defendant reviewed its claims. (Opp'n 8.) "Equitable tolling allows a plaintiff to prevent the statute of limitations from running during a particular period" if the plaintiff establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Henson v. Fidelity Nat'l Fin. Co.*, No. 2:14-cv-01240-ODW (RZx), 2014 WL 1246222, at *5, (C.D. Cal. Mar. 21, 2014) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). However, equitable tolling is a rarity that only applies in "extraordinary circumstances." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009). Moreover, application of equitable tolling is only warranted where the defendant has "induced the plaintiff to delay filing until after the statute of

limitations has run." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1127 (9th Cir. 2008).

Plaintiff has not alleged any facts that plausibly suggest that Defendant's alleged actions induced Plaintiff to postpone filing this claim until the statute of limitations expired. *Iqbal*, 556 U.S. 678 (stating that the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). Plaintiff was aware of the facts giving rise to its three claims for several years before it filed this action and before the statute of limitations ran. As such, equitable tolling does not apply in this case.

**C.  Equitable Estoppel**

Plaintiff contends that Defendant is "equitably estopped from asserting the statute of limitations as a defense" because from April 2014, until June 2014, Defendant "represented" that it was "re-processing" Plaintiff's claims. (Opp'n 12–13.) "Equitable estoppel . . . may come into play if the defendant takes active steps to prevent the plaintiff from suing in time. . . ." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (finding that "[e]quitable estoppel . . . focuses primarily on the actions taken by the *defendant* in preventing a plaintiff from filing suit." (citations and quotations omitted)). To invoke the doctrine requires "active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Id.* (citations and quotations omitted).

Here, Plaintiff has not alleged sufficient facts that demonstrate that Defendant engaged in conduct "above and beyond" the actions alleged in the Complaint such as to prohibit Plaintiff from initiating this action before the statute of limitations expired for its three claims. Therefore, the Court declines to invoke the doctrine of equitable estoppel in this case.

///
///
///

10

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Complaint. (ECF No. 10.) Accordingly, the Court **DISMISSES** Plaintiff's Complaint with prejudice.

**IT IS SO ORDERED.**

December 15, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**