# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IV SOLUTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>EMPIRE HEALTHCHOICE ASSURANCE, INC., a corporation doing business as Empire Blue Cross Blue Shield; and Does 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:17-cv-05615-ODW-SK<br><br>**AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS IV'S COMPLAINT [10]** |

## I. INTRODUCTION

This action arises out of claims for fraud, breach of contract, and open book account related to the administration of medical services. Plaintiff IV Solutions ("IV") initiated this action in the Los Angeles County Superior Court on June 23, 2017. (Exhibit 1, ECF No. 1-2.) Defendant Empire HealthChoice Assurance, Inc. ("Empire"), removed the case to federal court on July 28, 2017. (Notice of Removal, ECF No. 1.) Before the Court now is Empire's Motion to Dismiss IV's Complaint.

1

(Mot., ECF No. 10.) For the reasons discussed below, the Court **GRANTS** Empire's Motion and **DISMISSES** IV's Complaint **WITH PREJUDICE**.[1]

## II. FACTUAL BACKGROUND[2]

IV is a home infusion pharmacy that provided medical services to Empire's insured, M.M.[3] (*See generally* Compl., Exhibit 1, ECF No. 1-2.) After being diagnosed with hypogammaglobulinemia, Dr. Karo Arzoo, one of Empire's in-network physicians, prescribed M.M. an "urgent administration of intravenous immunoglobulin" ("IVIG"). (*Id.* ¶ 11.) M.M. was referred to IV because it was the only provider able to promptly administer the IVIG treatments. (*Id.* ¶ 13.)

IV first provided M.M. IVIG treatments on February 25, 2011, which Empire subsequently authorized. (*Id.* ¶¶ 14–15.) According to IV, on March 15, 2011, Empire again authorized IV to provide the IVIG treatments for the dates of service March 1, 2011–June 1, 2011. (*Id.* ¶ 15.) On February 20, 2012, Empire authorized IV to treat M.M. for a year—February 25, 2012 through February 25, 2013. (*Id.*) IV alleges that during each authorization, Empire represented that it would pay IV's "billed charges for the services administered to M.M." (*Id.*) IV also asserts that on April 16, 2012, Empire informed IV that the services provided to M.M. were "covered at 100%." (*Id.*) IV further alleges that in reliance on Empire's representations and repeated authorizations, it continued to provide the IVIG treatments to M.M. (*Id.*)

In July 2011, Empire informed IV that it was "no longer authorized" to provide IVIG treatments to M.M. (*Id.* ¶ 16.) Nevertheless, IV continued to provide M.M. the "medically necessary physician-ordered" IVIG treatments based on its belief that Empire was unable to find a suitable provider to replace IV. (*Id.*) IV continued to provide M.M. the IVIG treatments until September 14, 2012. (*Id.* ¶ 17.)

---

[1] After carefully considering the papers filed in support of, and against, the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] The Court recites the facts as pleaded in IV's Complaint, which the Court is required to accept as true for the purposes of this Motion. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

[3] M.M.'s identity is known to Empire, and will remain confidential to protect his or her privacy.

IV alleges that Empire represented that it would pay IV the billed charges on several occasions. (*Id.* ¶¶ 18–19.) According to IV, on February 20, 2012, Empire's employee, Theresa Bowman, orally represented that IV was authorized to provide the IVIG treatments to M.M. for the dates of service February 25, 2012–February 24, 2013. (*Id.* ¶ 18.) IV states that Theresa Bowman also represented that IV "would be paid for its services at a rate of 100% of [IV's] billed charges for such services." (*Id.*) IV argues that Theresa Bowman knew that Empire "intended not to pay [IV] it's billed charges..." and that this knowledge constitutes the "Suppressed Fact" to show Empire's fraud. (Compl. ¶ 30.) IV further alleges that on April 10, 2012, and June 19, 2012, Empire issued "written retro-authorization[s]" covering the February 25, 2011–January 29, 2012, and February 25, 2012–February 24, 2013, dates of service, respectively. (*Id.* ¶ 19.)

IV uniformly charges the same for its products and services, and was to be paid at an "in-network level of benefits." (*Id.* ¶¶ 21–22.) IV asserts that because Empire did not negotiate a discount with IV, the applicable rate for the services provided to M.M. is the billed charges. (*See id.* ¶ 23.) Thus, IV billed Empire a total of $5,954,020.89 for the services it provided to M.M. (*Id.* ¶ 25.) To date, Empire has only paid $103,050.63 of the billed charges, leaving an unpaid balance of $5,850,970.26. (*Id.*)

Beginning in April 2012, in response to IV's inquiry regarding the underpayments, Empire began reviewing IV's claims related to the services it provided to M.M. (Compl. ¶ 26.) In a series of communications with Empire from April 3, 2012 through February 4, 2014, IV repeatedly discussed Empire's unpaid balance. (*Id.*) According to the Complaint, Empire communicated to IV that it was "reviewing" the claims and would provide IV with a final answer regarding its remaining balance on several occasions. (*Id.*) For example, IV alleges that on April 3, 2012, "Linda Hennessy, [Empire's] employee, informed Sheina Saeger, [IV's employee], that [Empire] 'will most likely review the case this week.'" (Compl. ¶

3

27(a).) On April 16, 2012, one of Empire's supervisors, "Kimbra," allegedly "confirmed that 'the services are covered at 100%.'" (*Id.* ¶ 27(b).) IV further claims that in October 2012, "Lynn Hounihan, [Empire's Employee], informed Sheina Saeger, [IV's employee], that she was working on getting the 2012 claims processed that were denied in error." (*Id.* ¶ 27(c).) On July 29, 2013, "[Empire] informed [IV] that it had 'repriced'[IV's] claims and would be paying additional amounts" to IV based on the repricing. (*Id.* ¶ 27(d).)

IV alleges that in September 2013 it received "numerous small payments" from Empire for the services provided to M.M., but far less than the total amount due. (*See id.* ¶ 27(e).) On February 4, 2014, IV's attorney sent a demand letter to Empire requesting that it pay the remaining billed charges. (*Id.* ¶ 27(f).) "In late 2014," Empire responded to IV's letter and for the first time "unequivocally inform[ed]" IV that it would not pay the remaining balance due. (*Id.* ¶ 27(g).)

Consequently, IV filed this action three years later, on June 23, 2017, alleging claims for (1) fraud, (2) breach of contract, and (3) open book account. (*See generally* Compl.) On September 8, 2017, Empire filed a Motion to Dismiss, which the parties have fully briefed. (*See generally* Mot., ECF No. 10-1; ECF Nos. 11–12.) In support of its Motion, Empire requests that the Court take judicial notice of the California State Board of Pharmacy's Decision and Order dated April, 17, 2015. (Exhibit 1, ECF No. 13.) (*See generally id.*) As IV does not oppose Empire's request and the Board of Pharmacy's decision and order is a publicly available government document not subject to reasonable dispute, the Court grants Empire's request. Fed. R. Evid. 201(b).[4]

### III. LEGAL STANDARD

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support

---

[4] The Court is limited to the existence of the documents it takes upon judicial notice, but not the facts contained therein. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

4

an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).[5]

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the IV. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV. DISCUSSION

### A. Statute of Limitations

Empire argues that IV's claims for fraud, breach of contract, and open book account have all expired. (Mot. 1.) A district court may dismiss claims if the running of the statute of limitations is apparent on the face of the complaint and if "the assertions of the complaint, read with the required liberality, would not permit the IV to prove that the statute was tolled." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).

1. *Breach of Contract*

Empire contends that the allegations that give rise to IV's claim for breach of contract are untimely, and thus barred by the statute of limitations. (Mot. 5.) Empire's argument rests on its belief that IV became aware of Empire's underpayments as early as April 2012. (*Id.*; Reply 2, ECF No. 12.) In opposition, IV argues that the statute of limitations did not begin until June 2014, when Empire "unequivocally inform[ed] [IV] for the first time that it would not pay [IV] the remaining amounts of its billed charges due." (Compl. ¶ 27(g).)

The statute of limitations for a written contract is four years. Cal. Code Civ. P. § 337. A claim for breach of contract "accrues at the time of the breach, which then starts the limitations period running." *Cochran v. Cochran*, 56 Cal. App. 4th 1115, 1120 (1997) (citation omitted). Where a contract fails to specify a time for performance, like the contract in this case, "the party is obliged to perform within a reasonable time, and the statute of limitations begins to run when a 'reasonable time' has expired without performance." *IV Sols., Inc., v. United HealthCare*, No. CV 15-01418 DDP (SSx), 2015 WL 4127823, at *2 (C.D. Cal. July 7, 2015); *see also* Cal. Civ. Code § 1657. "What constitutes a reasonable time for performance is a question of fact, and depends on the circumstances of each case." *Yue v. Conseco Life Ins. Co.*, Case No. CV 08-1506 AHM (JTLx), 2008 WL 5158869, at *7 (C.D. Cal. Dec. 8, 2008), *on reconsideration in part*, Case No. CV 08-1506 AHM (JTLx), 2010 WL 11509293 (C.D. Cal. Oct. 8, 2010) (internal quotations and citations omitted).

Here, IV alleges that pursuant to an oral contract that was later memorialized in writing, it provided services to M.M. from February 25, 2011, through September 2012. (*See* Compl. ¶¶ 24, 17.) But that earlier in April 2012, IV became aware of Empire's underpayments for its services and "notified Empire of the shortfall of Empire's payments and requested that Empire remedy that shortfall." (Compl. ¶ 26.) After a series of communications between the parties—including a demand letter from IV's counsel in February 2014—Empire finally sent a letter in June 2014 that

"unequivocally inform[ed] [IV] for the first time that it would not pay" IV for the billed charges. (Compl. ¶ 27(g).)

In regards to the determination of whether IV's contract claim has expired, neither party focuses on the appropriate inquiry—what was a reasonable amount of time for Empire to delay payment to IV for the billed charges.[6] Cal. Civ. Code § 1657. Nevertheless, on the face of its Complaint, IV has not alleged facts demonstrating that it was reasonable for Empire to delay, and then ultimately deny, payment of $5,850,970.26 seventeen months after the last service provided to M.M. in September 2012. *See IV Solutions, Inc. v. PacifiCare Life and Health Ins. Co.*, No. CV16-07153-SJO-MRW, 2016 WL 7888009, at *6 (C.D. Cal. Dec. 19, 2016) (finding that the delay by an insurance company to pay IV a year after IV demanded payment to be unreasonable).

Therefore, IV's breach of contract claim, which has a four-year statute of limitations, is untimely as it expired, at the very latest, in September 2016—after the last date of service. Since IV did not file this case until June 23, 2017, its breach of contract claim is untimely pled.

  2.  *Fraud*

The statute of limitations for a fraud claim is three years. Cal. Civ. Code § 338. "The cause of action . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Civ. Code § 338; *see also Gutierrez v. Mofid*, 39 Cal. 3d 892 (1985) (the statute of limitations period begins to run when the IV has actual or constructive knowledge of the facts essential to her claim for fraud). IV's fraud claim is based on its allegations that several of

---

[6] In its Opposition, IV argues that the "statute of limitations begins to run when the insurer issues an **unequivocal** denial of payment in writing." (Opp'n 6 (citing *IV Sols., Inc. v. PacifiCare Life & Health Ins. Co.*, Case No. 16-07153 SJO (MRWx), 2016 WL 7888009 (C.D. Cal. Dec. 19, 2016)).) The court in that case found that *Vishva Dev, M.D., Inc. v. Blue Shield of California Life & Health Insurance Co.*, 2 Cal. App. 5th 1218 (2016), "stands for the proposition that the statute of limitations begins to run when the insurer issues an unequivocal denial of payment . . . ." However, the Court finds that the facts of this case are distinguishable from *Vishva*, where here, IV has filed a claim under ordinary contract law, and not quantum meruit.

Empire's employees "knew that Empire intended not to pay [IV] its billed charges . . . and not to make payments to [IV] in a timely manner (the 'Suppressed Fact')." (Compl. ¶ 30.) IV argues that it did not become aware of the Suppressed Fact until June 2014, when Empire "unequivocally" informed IV that it would not pay the billed charges. (Opp'n 3.)

Here, the Court finds that IV's claim for fraud is time barred, as IV has not alleged on the face of the Complaint sufficient facts that it was unaware of Empire's "Suppressed Fact" such as to delay the accrual of its claim until June 2014. IV had, at a minimum, constructive knowledge that Empire did not intend to make payments to IV in a timely manner as early as September 2013. This is evidenced by the fact that after a year of communicating with Empire regarding payment (February 2012–February 2013), Empire eventually only sent IV "small payments . . . in amounts far less than the amounts due" in September 2013. (Compl. ¶ 27(e).) Moreover, in February 2014, five months after Empire sent those small payments, and over a year after IV finished providing its services under its contract with Empire, IV's counsel sent Empire a letter "demand[ing] that [Empire] pay the billed charges remaining." (*Id.* ¶ 27(g).) Therefore, it can be inferred that at the latest, in February 2014, IV was aware of the fact that after years of underpayments Empire did not intend to make payments to IV "in a timely manner" or pay its billed charges. Therefore, IV's claim for fraud is untimely, having expired in February 2017.

    3.    *Open Book Account*

A claim for open book account expires after four years. Cal. Code Civ. P. § 337. "A cause of action for an open book account accrues on 'the date of the last entry in the book account.'" *United Healthcare*, 2015 WL 4127823, at *2 (citing *In re Roberts Farms Inc.,* 980 F.2d 1248, 1253 (9th Cir. 1992)). IV alleges that they "maintained in the regular course of business, an account of debits and credits for service and payments transactions, in a reasonably permanent form" for the services it provided to M.M. (Compl. ¶¶ 50–52.) IV also alleges that it continued to provide

M.M. services until September 14, 2012. (Compl. ¶¶ 17, 24.) Consequently, the last entry in the book account was made sometime in September 2012—when IV performed the final IVIG treatment. Therefore, the four-year statute of limitations for this claim has expired. *See e.g.*, *United Healthcare*, 2015 WL 4127823, at *2 (finding that "the final entry in [a] book account was presumably made some time shortly after the provision of the final treatment [to the patient] . . . .").

**B.     Equitable Tolling**

In Opposition to Empire's Motion, IV asserts that the statute of limitations for its claims was equitably tolled while Empire reviewed its claims. (Opp'n 8.) "Equitable tolling allows a plaintiff to prevent the statute of limitations from running during a particular period" if the plaintiff establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Henson v. Fidelity Nat'l Fin. Co.*, No. 2:14-cv-01240-ODW (RZx), 2014 WL 1246222, at *5, (C.D. Cal. Mar. 21, 2014) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). However, equitable tolling is a rarity that only applies in "extraordinary circumstances." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009). Moreover, application of equitable tolling is only warranted where the defendant has "induced the plaintiff to delay filing until after the statute of limitations has run." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1127 (9th Cir. 2008).

IV has not alleged any facts that plausibly suggest that Empire's alleged actions induced IV to postpone filing this claim until the statute of limitations expired. *Iqbal*, 556 U.S. 678 (stating that the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). IV was aware of the facts giving rise to its three claims for several years before it filed this action and before the statute of limitations ran. Accordingly, equitable tolling does not apply in this case.

## C. Equitable Estoppel

IV contends that Empire is "equitably estopped from asserting the statute of limitations as a defense" because from April 2014, until June 2014, Empire "represented" it was "re-processing" IV's claims. (Opp'n 12–13.) "Equitable estoppel . . . may come into play if the defendant takes active steps to prevent the plaintiff from suing in time. . . ." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (finding that "[e]quitable estoppel . . . focuses primarily on the actions taken by the *defendant* in preventing a plaintiff from filing suit." (citations and quotations omitted)). To invoke the doctrine requires "active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the IV from suing in time." *Id.* (citations and quotations omitted).

Here, IV has not alleged sufficient facts that demonstrate that Empire engaged in conduct "above and beyond" the actions alleged in the Complaint such as to prohibit IV from initiating this action before the statute of limitations expired for its three claims. Therefore, the Court declines to invoke the doctrine of equitable estoppel in this case.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Empire's Motion to Dismiss IV's Complaint. (ECF No. 10.) Accordingly, the Court **DISMISSES** IV's Complaint with prejudice.

**IT IS SO ORDERED.**

April 17, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**